# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:22CR5 |
| v. ) | |
| ) | Violations: |
| AMIE M. HAMMONDS ) | |
| CHRISTOPHER M. HAMMONDS ) | 18 U.S.C. § 371 |
| ) | 18 U.S.C. § 1040(a) |
| ) | 18 U.S.C. § 1349 |
| ) | 18 U.S.C. § 1341 |
| ) | 18 U.S.C. § 1028A |

## INDICTMENT

## INTRODUCTION

The Grand Jury charges that:

### CARES Act and Pandemic Unemployment Benefits

1. Unemployment Insurance (UI) is a state-federal program that provides monetary benefits to eligible lawful workers. Although state workforce agencies (SWAs) administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of earnings over a base period. In the Commonwealth of Virginia, the Virginia Employment Commission (VEC) administers the UI program.

1

USAO # 2022R00132

2. On March 13, 2020, the President of the United States declared the ongoing Coronavirus Disease (COVID-19) pandemic to be an emergency under §501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C §§ 5121-5207).

3. On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide UI for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

4. The first program, PUA, provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise did not qualify for regular UI or extended benefits under state or federal law or PEUC (detailed further below). Coverage included individuals who had exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for pandemic unemployment benefits administered by the

2

USAO # 2022R00132

VEC if he/she had previously performed such work in Virginia and was unemployed, partially unemployed, unable to work, or unavailable to work *due to a COVID-19 related reason*. The eligible timeframe to receive PUA included weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

5. The second program, PEUC, was a state-federal program that provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law, had no rights to regular UI under any other state or federal law, were not receiving UI under the UI laws of Canada, and were otherwise able to work, available for work, and actively seeking work. Under this program, states must offer flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC included weeks of unemployment beginning after the respective state established an agreement with the federal government through December 31, 2020. The earliest available week being the week of April 5, 2020.

6. The third program, FPUC, provided individuals who were collecting regular UI, PEUC, PUA, and several other forms of benefits with an additional $600 per week. The eligible timeframe to receive FPUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government through July 31, 2020. The earliest available week being the week of April 5, 2020.

3

USAO # 2022R00132

7. On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19. The "Lost Wages Assistance Program" ("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds. The period of assistance for LWAP was August 1, 2020 to December 27, 2020.

8. The PUA, FPUC, and LWAP programs (collectively, "pandemic unemployment benefits") were administered by the various states, including the Commonwealth of Virginia, but their benefits were funded by the federal government. In order to receive pandemic unemployment benefits, an applicant must access a website maintained and administered by the VEC and file a claim. Separate claims were not filed for PUA, FPUC, and LWAP. Rather, a single claim for PUA, if approved, resulted in an approved claim for any additional FPUC and LWAP benefits as well.

9. Individuals were only eligible for pandemic unemployment benefits if they were unemployed for reasons related to the COVID-19 pandemic and were otherwise available to work and were seeking employment.

10. Once an applicant was at the website, the applicant was required to enter personally identifiable information (PII) including name, date of birth, Social Security Number, email address, phone number, and physical address. An

applicant was then required to answer a series of questions to determine eligibility and payment amount. An applicant would then attest, under penalty of perjury, that the information provided in the claim application was true and accurate.

11. Upon completion, the application was submitted to the VEC. If approved, the applicant could choose whether to have the pandemic unemployment benefits deposited directly into a bank account of their choosing, or the funds could be loaded on a pre-paid debit card which was then shipped to the applicant via United States Postal Service to the address listed on their application.

12. The recipient of pandemic unemployment benefits received a unique Personal Identification Number ("PIN") to access the VEC each week to re-certify their unemployment status. Payments for pandemic unemployment benefits were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: was ready, willing and able to work each day; was seeking full time employment; did not refuse any job offers or referrals; and had reported any employment during the week and the gross pay or other payments received.

### The Conspiracy

13. In or about April 2020, AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS developed a scheme and artifice to file fraudulent claims for pandemic unemployment benefits via the VEC website. The scheme and artifice

was to submit claims for various individuals, including AMIE M. HAMMONDS, CHRISTOPHER M. HAMMONDS, and others who were then known to be ineligible to receive pandemic unemployment benefits by making materially false representations including, but not limited to: that the applicant was unemployed as a result of COVID-19; using a false name as the applicant's last employer when the applicant became unemployed due to COVID-19; stating that the applicant was ready, willing, and able to work each day; and that the applicant was actively seeking full-time employment.

14. Because pandemic unemployment benefits were paid on a weekly basis, the scheme was a continuing scheme whereby AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS agreed and conspired to file weekly re-certifications for the claims they submitted. In so doing, AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS re-verified and re-certified the same materially false representations and pretenses as stated herein for each claim submitted, on numerous occasions as further detailed below.

### Manner and Means of the Conspiracy

15. In order to effect the object of the conspiracy, AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS did the following acts, as well as others not detailed herein:

a. CHRISTOPHER M. HAMMONDS filed an initial fraudulent claim for pandemic unemployment benefits on his own behalf on or about April 19, 2020. On the fraudulent application, CHRISTOPHER M. HAMMONDS made

numerous false representations about the nature of his employment. The filing of this fraudulent claim and all subsequent weekly re-certifications resulted in at least $27,748.00 being paid to CHRISTOPHER M. HAMMONDS including PUA and LWAP payments. At the time of the filings, CHRISTOPHER M. HAMMONDS was not eligible to receive pandemic unemployment benefits; he was not unemployed because of COVID-19.

        b.      Shortly after filing his claim, CHRISTOPHER M. HAMMONDS received from the VEC via United States Post a monetary determination letter, PIN code, and debit card in his name shipped to an address in St. Paul, Virginia. The address was the postal address used by CHRISTOPHER M. HAMMONDS on his fraudulent application. In order to continue to receive weekly pandemic unemployment benefit deposits, CHRISTOPHER M. HAMMONDS made subsequent weekly re-certifications for all fraudulent claims through the VEC website.

        c.      After learning of CHRISTOPHER M. HAMMONDS approved claim for unemployment benefits, CHRISTOPHER M. HAMMONDS and AMIE M. HAMMONDS filed an initial fraudulent claim for pandemic unemployment benefits on behalf of AMIE M. HAMMONDS on or about July 15, 2020. On this fraudulent application, CHRISTOPHER M. HAMMONDS and AMIE M. HAMMONDS made numerous false representations about the nature of AMIE M. HAMMONDS' employment. The filing of this fraudulent claim and all subsequent weekly re-certifications resulted in at least $27,748.00 being paid to AMIE M.

7

HAMMONDS including PUA and LWAP payments. At the time of the filings, AMIE M. HAMMONDS was not eligible to receive pandemic unemployment benefits; she was not unemployed because of COVID-19.

        d.     Shortly after filing her claim, AMIE M. HAMMONDS received from the VEC via United States Post a monetary determination letter, PIN code, and debit card in her name shipped to an address in St. Paul, Virginia. The address was the postal address used by AMIE M. HAMMONDS on her fraudulent application. In order to continue to receive weekly pandemic unemployment benefit deposits, AMIE M. HAMMONDS made subsequent weekly re-certifications for all fraudulent claims through the VEC website.

        e.     After receiving payments for their fraudulent unemployment claims, AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS conspired to file a fraudulent unemployment claim in the name of A.L., without A.L.'s knowledge or permission. On or about December 8, 2020, AMIE M. HAMMONDS and CHRISTOPHER M. HAMMONDS filed a fraudulent claim for pandemic unemployment benefits using A.L.'s personally identifiable information.

## CONCLUSION

16. **The aggregate *actual* loss for all fraudulent claims filed as part of this conspiracy is not less than $55,496.00.**

## COUNT ONE

## 18 U.S.C. § 371

## (Conspiracy to Commit an Offense / Defraud the United States)

The Grand Jury charges that:

1. The Introduction is realleged and incorporated by reference.

2. Between on or about April 1, 2020, and on or about September 1, 2021 in the Western District of Virginia and elsewhere, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS** knowingly and willfully conspired and agreed with each other to (1) defraud the United States and (2) commit an offense against the United States, to wit: file fraudulent claims for pandemic unemployment benefits as authorized by, and administered through, federal law in violation of Title 18, United States Code, §1040(a), such benefits being authorized, paid, and disbursed in connection with the Coronavirus Disease (COVID-19) pandemic, an emergency declaration under §501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

3. It was a part of the conspiracy that **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS** submitted fraudulent claims for pandemic unemployment benefits in order to receive funds to which they were not entitled.

4. To effect the object of the conspiracy, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS** did several acts, including but not limited to those acts described in the Introduction to this Indictment.

5. All in violation of Title 18, United States Code, § 371.

USAO # 2022R00132

## COUNTS TWO THROUGH FOUR

**(18 U.S.C § 1040(a) – Fraud in Connection with Emergency Benefits)**

The Grand Jury charges that:

1. The information in the Introduction is realleged and incorporated by reference.

2. On or about the dates detailed below, in the Western District of Virginia and elsewhere, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS**, as principals, aiders, and abettors, knowingly made and caused to be made materially false, fictitious, and fraudulent statements and representations on claim applications for pandemic unemployment benefits that were in a matter involving a benefit authorized, paid, and disbursed in connection with an emergency declaration under §501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

| Count | Beneficiary Claimant Name | Date Filed |
|---|---|---|
| 2 | **CHRISTOPHER M. HAMMONDS** | April 19, 2020 |
| 3 | **AMIE M. HAMMONDS** | July 15, 2020 |
| 4 | A.L. | December 8, 2020 |

3. The materially false, fictitious, and fraudulent statements and representations, to wit: that the claimant (1) had been employed at the time of the COVID-19 outbreak; (2) was unemployed as a result of the COVID-19 pandemic; and (3) was available to work and was actively seeking employment, were made

in a matter involving a benefit transported in the mail at some point in the authorization, disbursement, and payment of such benefit.

4. All in violation of Title 18, United States Code, Sections 2 and 1040(a)(2).

## COUNT FIVE

## 18 U.S.C. § 1349/1341

## (Conspiracy to Commit Mail Fraud)

The Grand Jury charges that:

1. The Introduction is realleged and incorporated by reference.

2. Between on or about April 1, 2020, and on or about September 1, 2021 in the Western District of Virginia and elsewhere, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS** knowingly conspired with each other to commit mail fraud of benefits authorized by, disbursed, and paid in connection with a presidentially declared major disaster or emergency as defined by section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42. U.S.C. § 5122 et. seq.), in violation of Title 18, United States Code, §1341, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations, and for the purpose of attempting to execute, and executing such scheme and artifice, caused to be delivered by mail a matter or thing, to wit: debit cards, monetary determination letters, and PIN codes that were sent and delivered by the United States Postal Service.

3. The scheme and artifice so devised was to submit fraudulent claims for pandemic unemployment benefits in order to receive funds to which they were not entitled by means of materially false and fraudulent representations.

4. To effect the object of the conspiracy, **AMIE M. HAMMONDS** and

**CHRISTOPHER M. HAMMONDS** did several acts, including but not limited to, the acts described in the Introduction to this Indictment.

 5. All in violation of Title 18, United States Code, § 1349 and § 1341.

## COUNTS SIX THROUGH EIGHT

### (18 U.S.C § 1341 – Mail Fraud)

The Grand Jury charges that:

1. The information in the Introduction is realleged and incorporated by reference.

2. On or about the dates detailed below, in the Western District of Virginia and elsewhere, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS**, as principals, aiders, and abettors, having devised a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, for the purpose of executing such scheme and attempting to do so knowingly caused to be delivered by mail according to the direction thereon any matter or thing, to wit: monetary determination letters, debit cards, and PIN codes, such matter or thing pertaining to benefits that were authorized, paid, and disbursed in connection with an emergency declaration under §501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

| Count | Beneficiary Claimant Name | Date Filed |
|---|---|---|
| 6 | CHRISTOPHER M. HAMMONDS | April 19, 2020 |
| 7 | AMIE M. HAMMONDS | July 15, 2020 |
| 8 | A.L. | December 8, 2020 |

3. The scheme and artifice so devised was to submit fraudulent claims for pandemic unemployment benefits in order to receive funds to which they were not entitled by means of materially false and fraudulent representations.

4. All in violation of Title 18, United States Code, Sections 2 and 1341.

## COUNT NINE

### (18 U.S.C § 1028A – Aggravated Identity Theft)

The Grand Jury charges that:

1. The information in the Introduction is realleged and incorporated by reference.

2. On or about December 8, 2020, in the Western District of Virginia and elsewhere, **AMIE M. HAMMONDS** and **CHRISTOPHER M. HAMMONDS**, as principals, aiders, and abettors, knowingly used and caused to be used, without lawful authority, a means of identification of another person (A.L.) during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: 18 U.S.C. § 1040 and § 1341, knowing that the means of identification belonged to another actual person.

3. All in violation of Title 18, United States Code, Sections 2 and 1028A.

TRUE BILL, this \_\_\_31\_\_\_ day of May, 2022.

_____
Grand Jury Foreperson

FOR _____
CHRISTOPHER R. KAVANAUGH
United States Attorney

USAO # 2022R00132